UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | CASE NO. C70-9213 RSM |
| Plaintiffs, | SUBPROCEEDING NO. 17-03 RSM |
| v. | ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO EXCLUDE TESTIMONY |
| STATE OF WASHINGTON, et al., | |
| Defendants. | |

## I. INTRODUCTION

This subproceeding, which was initiated by the Stillaguamish Tribe of Indians ("Stillaguamish") to adjudicate its claimed treaty right to "harvest all species of fish and shellfish in the marine waters on the eastern side of Whidbey Island and both shores of Camano Island," is before the Court on several pending full or partial summary judgment motions. All the motions are opposed and have been fully briefed.

Stillaguamish seeks partial summary judgment determining that the area of its treaty fishing rights include Port Susan, a portion of the marine waters at issue. Dkt. #170.[1]

---

[1] Dkt. #22336 in *United States v. Washington*, Case No. C70-9213RSM (the "*Main Case*"). Throughout, the Court provides citations to the docket of the *Main Case* the first time a filing is cited. Thereafter, citations are only to the docket of this subproceeding.

ORDER – 1

1   The Upper Skagit Indian Tribe ("Upper Skagit") seeks summary judgment determining

2   that Stillaguamish has no treaty right to fish in any of the marine waters at issue. Dkt. #174.[2]

3   The Swinomish Indian Tribal Community ("Swinomish") seeks summary judgment

4   determining that Stillaguamish has no treaty right to fish in any of the marine waters at issue in

5   this case outside of Port Susan.[3] Dkt. #179.[4]

6   The Tulalip Tribes ("Tulalip") seeks partial summary judgment determining that

7   Stillaguamish lacks treaty fishing rights in the marine waters at issue in this case, except for a

8   portion of northern Port Susan and a portion of Skagit Bay, both of which Tulalip previously

9   agreed was "non-exclusive usual and accustomed fishing area of the Stillaguamish Tribe." Dkt.

10  #176[5] at 2.

11  Also before the Court are several evidentiary disputes. Most notably, Upper Skagit seeks

12  to exclude portions of the testimony of Dr. Chris Friday, Stillaguamish's expert witness for this

13  matter. Dkt. #173.[6] Additionally, the parties have made various requests for the Court to strike

14  and not consider evidence submitted in support of the pending summary judgment motions. *See*

15  *e.g.*, Dkt. #191[7] at 2–9; Dkt. #206[8] at 3–4; Dkt. #223[9] at 2.

16  Having fully considered the matter and the record before the Court, the Court denies the

17  motions for full and partial summary judgment and denies the evidentiary challenges without

18  prejudice.

---

[2] Dkt. #22340 in the *Main Case*.
[3] Swinomish continues to dispute that Stillaguamish has a treaty right to fish within Port Susan but does not seek summary judgment on the matter.
[4] Dkt. #22345 in the *Main Case*.
[5] Dkt. #22342 in the *Main Case*.
[6] Dkt. #22339 in the *Main Case*.
[7] Dkt. #22358 in the *Main Case*.
[8] Dkt. #22374 in the *Main Case*.
[9] Dkt. #22430 in the *Main Case*.

ORDER – 2

## II.     BACKGROUND

Stillaguamish was an original intervenor in the case underlying this subproceeding: *United States v. Washington*, Case No. C70-9213RSM (the "*Main Case*"). Within the *Main Case*, Judge Boldt considered Stillaguamish's right to take fish at the tribe's usual and accustomed fishing grounds and stations ("U&A"), as reserved under the Treaty of Point Elliott.[10] In *Final Decision #1*, Judge Boldt concluded that "fishing constituted a means of subsistence for the Indians inhabiting the area embracing the Stillaguamish River and its north and south forks, which river system constituted the usual and accustomed fishing places of the tribe." *United States v. Washington*, 384 F. Supp. 312, 379 (W.D. Wash. 1974) ("*Final Decision #1*"), *aff'd and remanded*, 520 F.2d 676 (9th Cir. 1975).

**A. Stillaguamish Attempts to Establish Marine U&A**

This is not the first time that Stillaguamish has sought to establish treaty fishing rights in marine waters, but none of those prior proceedings have advanced to a final determination.

First, in 1974 and 1975, just shortly after *Final Decision #1*, Stillaguamish filed fishing regulations allowing its members to fish in marine waters. *See United States v. Washington*, 459 F. Supp. 1020, 1068–69 (W.D. Wash. Mar. 16, 1978). Tulalip objected and brought the issue before the Court. *Id.* In challenging Stillaguamish's marine fishing regulations, Tulalip argued that *Final Decision #1* determined that Stillaguamish U&A was limited to riverine subsistence fishing. Judge Boldt rejected Tulalip's argument but rebuked Stillaguamish for attempting to expand its U&A through fishing regulations. *Id.* Judge Boldt did not, however, preclude the possibility that Stillaguamish could establish marine U&A, specifying that

> Paragraph 25 of the court's injunction in *Final Decision #1* (384 F. Supp. at 419) establishes the mechanism whereby further usual and accustomed fishing grounds

---

[10] Treaty of Point Elliott, art. 5, January 22, 1855, ratified March 8, 1859, and proclaimed April 11, 1859, 12 Stat. 927.

ORDER – 3

> may be established and recognized by the court. The Stillaguamish Tribe has not sought to expand its fishing places to include the northern portion of Port Susan by following the procedures set forth in that paragraph. . . . The Stillaguamish Tribe may at any future time apply to this court for hearing or reference to the Master, regarding expanded usual and accustomed fishing places so long as such application is in accordance with paragraph 25 of the court's injunction.

*Id.* (citation omitted).

Several years later, Stillaguamish did seek a marine U&A determination from the Court, a request that resulted in subproceeding 79-1. Dkt. #4[11] ¶ 11. Tulalip objected to Stillaguamish's request and, shortly thereafter, sought a more detailed determination of its own U&A and to establish exclusive fishing rights within a portion of that U&A. *See United States v. Washington*, C70-9213RSM, Subproceeding No. 80-1 (W.D. Wash. 1980). Stillaguamish similarly opposed Tulalip's request and asserted its own right to fish in parts of Tulalip's claimed U&A. Tulalip and Stillaguamish were able, however, to reach a settlement agreement which was ultimately entered into the record by the Court. *See United States v. Washington*, 626 F. Supp. 1405, 1480–83 (W.D. Wash. 1985). Pursuant to their agreement, Tulalip recognized a portion of Port Susan, "north of a line from Kayak Point due west to Camano Island (Northern 8A) as a non-exclusive usual and accustomed fishing area of the Stillaguamish Tribe." *Id.* at 1482. Further, Tulalip agreed to "support the Stillaguamish Tribe's request for a determination that the Stillaguamish Tribe's usual and accustomed fishing areas extend throughout Northern 8A and that portion of Area 8 southerly of a line drawn from Milltown to Polnell Point and northeasterly of a line drawn from Polnell Point to Rocky Point." *Id.* Following the agreement between Tulalip and Stillaguamish, Stillaguamish's claims in subproceeding 79-1 were dismissed without prejudice. Dkt. #4 ¶ 11.

---

[11] Dkt. #21583 in the *Main Case*.

ORDER – 4

1    Finally, Stillaguamish once again sought to establish marine U&A in 1993 as a part of

2 subproceeding 89-3.  But Stillaguamish lacked the financial resources necessary to pursue its

3 claim to completion and was forced to voluntarily dismiss the claim.  Dkt. #4 ¶ 12.

**B. Stillaguamish Initiates This Subproceeding to Establish Marine U&A**

Stillaguamish initiated this subproceeding again seeking a determination of whether its U&A extends into certain marine areas surrounding the Stillaguamish River.  Dkt. #4 ¶¶ 1, 14–23.  More specifically, Stillaguamish seeks

> [a]n order declaring that the non-exclusive usual and accustomed fishing places of the Stillaguamish Tribe of Indians include the marine waters on the eastern side of Whidbey Island and both shores of Camano Island, including Port Susan, Skagit Bay, Saratoga Passage, Penn Cove, Holmes Harbor, and Deception Pass, excluding the waters directly adjacent to the Tulalip Reservation and any other Indian Reservation.

Dkt. #4 at 8.

**C. Jurisdictional Challenges to this Subproceeding**

During this subproceeding, both Upper Skagit and Swinomish have each sought dismissal, challenging the jurisdictional basis for the action and maintaining that Judge Boldt had already specifically determined Stillaguamish U&A, had excluded marine waters, and had intentionally limited Stillaguamish U&A to the Stillaguamish River.[12]  *See* Dkt. #64[13] (Skagit motion to dismiss); Dkt. #66[14] (Swinomish motion to dismiss).  The Court rejected these jurisdictional challenges, finding that Judge Boldt's statement that the Stillaguamish River "*constituted* the usual and accustomed fishing places of the tribe" was meant to identify "one

---

[12] Tulalip sought partial summary judgment, supporting the Court's jurisdiction over Stillaguamish's request but seeking to limit Stillaguamish's possible U&A solely to the harvest of salmon. Dkt. #65 (Dkt. #21825 in the *Main Case*).
[13] Dkt. #21824 in the *Main Case*.
[14] Dkt. #21826 in the *Main Case*.

ORDER – 5

element of a whole." Dkt. #91[15] at 5.  As such, the Court "conclude[d] that the entirety of Stillaguamish U&A was not specifically determined by" *Final Decision #1*. *Id.* at 6.

### III. DISCUSSION

**A. Evidentiary Challenges**

The Court begins with the evidentiary challenges that the parties have included in their briefing and separately.

**1. Upper Skagit's Motion to Exclude Testimony of Dr. Chris Friday**

Upper Skagit, concurrent with filing its motion for summary judgment, filed a motion seeking to exclude most of the anticipated testimony of Stillaguamish's retained expert witness, historian Dr. Chris Friday.[16] Dkt. #173.

The motion primarily invokes Federal Rule of Evidence 702 and its allowance of opinion testimony from witnesses "qualified as an expert by knowledge, skill, experience, training, or education" so long as enumerated conditions are satisfied. FED. R. EVID. 702.  Specifically, that Rule requires that the expert's opinion testimony be helpful to the trier of fact, be based on sufficient facts or data, be based on reliable principles and methods, and result from a reliable application of the principles and methods to the facts of the case. FED. R. EVID. 702(a)–(d).

Upper Skagit allows that, under Rule 702, Dr. Friday "may testify about historical facts and provide 'historical context to' that evidence." Dkt. #173 at 2 (citation omitted).  But Upper Skagit takes issue with Dr. Friday's inference, from historical facts and context, "that Stillaguamish fished in marine waters," maintaining that the inference is unsupported by

---

[15] Dkt. #21900 in the *Main Case*.
[16] Stillaguamish provides a slightly fuller picture of Dr. Friday's qualifications; as a professor of history at Western Washington University, as the holder of a B.A., M.A., and Ph. D. in History, as a well-regarded academic on Coast Salish history, and as an author writing on Coast Salish history topics.  *See* Dkt. #184 at 2 (Dkt. #22350 in the *Main Case*).

ORDER – 6

historical expertise or factual data. *Id.* Further, Upper Skagit maintains that such an inference is for the Court, as the trier of fact, to draw, if at all, and that Dr. Friday's expertise is not necessary to aid the Court in drawing such inferences. *Id.* at 3 (arguing that Dr. Friday "has done nothing to show that his inference about human behavior is any more likely to be correct than the person on the street, or that he used his 'specialized knowledge' in forming that inference").

Stillaguamish responds that because a trial in this matter will be to the Court, "exclusion of expert testimony prior to trial is unnecessary because the Court can make its own credibility determinations about expert testimony in the full context of trial and accord the testimony the weight it warrants." Dkt. #184 at 2. Stillaguamish further argues that, at least for bench trials, this is the "approach consistently taken in this District." *Id.* at 4 (gathering several illustrative cases); *see also Shore v. Mohave Cty.*, 644 F.2d 1320, 1322–23 (9th Cir. 1981) (noting that the district court's gatekeeping function is less critical in a bench trial as judges are less likely than juries to be prejudiced by inadmissible expert opinions).

Here, the Court agrees with Stillaguamish that the merits of Upper Skagit's motion to exclude testimony should not be addressed in the context of the summary judgment motions with which it was filed but in the context of trial. To the extent Upper Skagit raises challenges to Dr. Friday's qualifications as an expert or the basis for specific opinions, those challenges are better made during trial with the opportunity for the Court to consider a fully developed record.[17] Upper Skagit's motion to exclude testimony is therefore denied without prejudice.

---

[17] The Court recognizes that Dr. Friday's testimony is also subject to pending motions in limine. *See* Dkt. #236 (Dkt. #22459 in the *Main Case*). The Court does not address or express any opinion on the merits of the arguments raised in the motions in limine. The Court will address the motions in limine by separate order and in due course.

ORDER – 7

**2. Upper Skagit Requests to Strike**

Upper Skagit, in opposing Stillaguamish's motion for partial summary judgment, also requests that the Court strike some of the evidence upon which Stillaguamish bases its motion. More specifically, Upper Skagit objects to maps, prior expert testimony, prior testimony in this case and in matters before other tribunals, purportedly undisclosed expert witness opinions, and evidence that was before Judge Boldt when he made his initial determination of Stillaguamish U&A. *See* Dkt. #191 at 2–9. Many of Upper Skagit's arguments touch on themes and issues like those presented in Upper Skagit's motion to exclude Dr. Friday's testimony. Just as the Court found that those objections were better addressed during trial, the same is true here. Additionally, the Court finds Upper Skagit's evidentiary arguments exacting and granular, characteristics that are inconsistent with the relaxed standards of proof and evidence applicable in the *Main Case* and its subproceedings. *See e.g.*, *United States v. Lummi Indian Tribe*, 841 F.2d 317, 318 (9th Cir. 1988) ("*Lummi*") ("the stringent standard of proof that operates in ordinary civil proceedings in relaxed"). The Court's resolution of the pending motions for summary judgment does not turn on the narrow evidentiary issues raised by Upper Skagit and the Court therefore finds the arguments appropriately deferred for consideration during trial and they are denied without prejudice for that reason.[18]

---

[18] The Court also notes that where a judge is the finder of fact, the evidentiary standards related to the admissibility and consideration of evidence are relaxed as the judge can more appropriately consider the objectionable evidence and it remains subject to exclusion or disregard. *See E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (noting that "in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial"); *Cmty. Ass'n for Restoration of the Env't, Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015) (noting that exclusion, under Rule 403, of relevant evidence because of possibility of undue prejudice has limited application in a bench trial); *KnightBrook Ins. Co. v. Payless Car Rental Sys., Inc.*, 43 F. Supp. 3d 965, 985 (D. Ariz. 2014) (noting that motion in limine to exclude allegedly unreliable and unhelpful expert witness was unnecessary in a bench trial "because the Court is not in danger of being swayed by the aura of the expert's testimony").

ORDER – 8

**3. Stillaguamish Requests to Strike**

Stillaguamish also objects to the Court's consideration of evidence submitted by the responding tribes. Stillaguamish objects to Swinomish's use of Dr. Friday's expert report in support of Swinomish's motion for partial summary judgment on the basis that Swinomish merely attached the report to its counsel's declaration and that the report is unsworn. Dkt. #193[19] at 12–13. Likewise, Stillaguamish objects to Upper Skagit's use of Dr. Friday's report for the same reasons and for the added reason that the referenced documents are not attached. Dkt. #195[20] at 12. And finally, Stillaguamish objects to expert witness reports submitted by Swinomish and Tulalip in opposing Stillaguamish's own motion for partial summary judgment for much the same reasons. *See* Dkt. #206 at 3–4. The Court does not find it necessary to address Stillaguamish's request to strike at this time because genuine disputes as to material facts remain regardless of the Court's consideration. Accordingly, the Court denies the requests without prejudice and the matter may be addressed at trial, should it be necessary.

**B. Applicable Legal Standards**

**1. Summary Judgment Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco,*

---

[19] Dkt. #22360 in the *Main Case*.
[20] Dkt. #22361 in the *Main Case*.

ORDER – 9

*Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Fed. Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On summary judgment, the Court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, where the non-moving party fails to properly support an assertion of fact or fails to properly address the moving party's assertions of fact, the Court will accept the fact as undisputed. FED. R. CIV. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. As such, the Court relies "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1278–79 (9th Cir. 1996) (quotation marks and citations omitted).

**2. Legal Standard Applicable to Stillaguamish's Marine U&A Claim**

Paragraph 25 of the Injunction incorporated into *Final Decision #1* explains how the parties can invoke the Court's continuing jurisdiction. *Final Decision #1*, 384 F. Supp. at 419.[21] Stillaguamish initiated this subproceeding under Paragraph 25(a)(6), seeking a determination of "the location of any of a [Stillaguamish's] usual and accustomed fishing grounds not specifically determined by *Final Decision #[1]*." Dkt. #4 ¶ 3 (italics added).

Because a proceeding under Paragraph 25(a)(6) seeks to determine a tribe's usual and accustomed fishing grounds, the Court sits in the same position as Judge Boldt and applies the

---

[21] The requirements of Paragraph 25 were subsequently modified. *See Main Case*, Dkt. #13599 (Aug. 24, 1993). Additionally, the Court has ordered, and subsequently amended, procedural requirements for filing requests for new subproceedings and for filing within existing subproceedings within the Court's Case Management/Electronic Case Filing system. *See Main Case*, Dkt. #20254 (November 20, 2012).

ORDER – 10

law of the case as established in his initial U&A determinations. *See United States v. Washington*, 88 F. Supp. 3d 1203, 1219–20 (W.D. Wash. 2015) ("It stands to reason that a standard of proof identical to that used by Judge Boldt in *Final Decision #1* would apply when the Court is asked to adjudicate a U&A not specifically determined by Judge Boldt. In such an instance, the Court is merely standing in for what Judge Boldt would himself have done had the evidence been before him.").

Under the Treaty of Point Elliott, Stillaguamish, like other tribes, maintained its right to fish "at usual and accustomed grounds and stations." Treaty of Point Elliott, art. 5. In *Final Decision #1*, Judge Boldt expounded further on the key treaty terms:

> 'Stations' indicates fixed locations such as the site of a fish wier or a fishing platform or some other narrowly limited area; 'grounds' indicates larger areas which may contain numerous stations and other unspecified locations which in the urgency of treaty negotiations could not then have been determined with specific precision and cannot now be so determined. 'Usual and accustomed,' being closely synonymous words, indicate the exclusion of unfamiliar locations and those used infrequently or at long intervals and extraordinary occasions. Therefore, the court finds and holds that every fishing location where members of a tribe customarily fished from time to time at and before treaty times, however distant from the then usual habitat of the tribe, and whether or not other tribes then also fished in the same waters, is a usual and accustomed ground or station at which the treaty tribe reserved, and its members presently have, the right to take fish.

*Final Decision #1*, 384 F. Supp. at 332.

In the *Main Case*, the Court has always placed the burden on the tribe asserting treaty fishing rights to establish, by "a preponderance of the evidence found credible and inferences reasonably drawn therefrom," that a particular area was U&A for the tribe at or before treaty times. *United States v. Washington*, 384 F. Supp. 312, 348 (W.D. Wash. 1974); *see also United States v. Washington*, 88 F. Supp. 3d 1203, 1217 (W.D. Wash. 2015) ("Indeed, it is the settled law of this case that each tribe bears the burden to produce evidence to support its U&A claims.").

ORDER – 11

However, "the stringent standard of proof that operates in ordinary civil proceedings is relaxed." *U.S. v. Lummi Indian Tribe*, 841 F.2d 317, 318 (9th Cir. 1988) ("*Lummi*").

The relaxing of stringent standards of proof is a practical matter. As Judge Boldt observed, "[i]n determining usual and accustomed fishing places the court cannot follow stringent proof standards because to do so would likely preclude a finding of any such fishing areas." *United States v. Washington*, 459 F. Supp. 1020, 1059 (W.D. Wash. 1975). "Little documentation of Indian fishing locations in and around 1855 exists today." *Id.*; *see also Makah Indian Tribe v. Quileute Indian Tribe*, 873 F.3d 1157, 1167 (9th Cir. 2017) (noting lack of available evidence and that "requiring extensive and precise proof would be 'extremely burdensome and perhaps impossible'"). What little evidence may be available is "sketchy and less satisfactory than evidence available in the typical civil proceeding." *Lummi*, 841 F.2d at 321. The evidence that is available is often "extremely fragmentary and just happenstance." *Id.* at 318. Accordingly, tribes "may rely on both direct evidence and reasonable inferences drawn from documentary exhibits, expert testimony, and other relevant sources to show the probable location and extent of their U&As." *United States v. Washington*, 129 F. Supp. 3d 1069, 1110 (W.D. Wash. 2015), *aff'd sub nom. Makah Indian Tribe v. Quileute Indian Tribe*, 873 F.3d 1157 (9th Cir. 2017) (citing *United States v. Washington*, 626 F. Supp. 1405, 1431 (W.D. Wash. 1985)). While remining mindful of the practical difficulties, the Court is still to make "its findings on a more probable than not basis." *Id.*

**C. Motions for Summary Judgment**

Having reviewed the briefing, the Court is led to the clear conclusion that resolution on summary judgment is not appropriate in this case. Each of the parties seeks summary judgment consistent with its own position and challenges the opposing motions on similar grounds. Because additional potentially relevant documents were discovered after the close of briefing,

ORDER – 12

the parties have additionally been afforded the opportunity to submit supplemental briefs.[22]  In total, the briefing and exhibits exceed three thousand pages.  In addition, the parties have retained five expert witnesses with varying opinions as to the historical details of this case and the inferences and conclusions to be drawn from those details.  And the parties themselves largely acknowledge that the outcome depends on the inferences drawn by the factfinder from the historical evidence and the testimony of their expert witnesses.

Stillaguamish, in its motion for partial summary judgment, maintains that the historical evidence wholly establishes the existence of Stillaguamish villages on marine shores, that shell middens evidence marine fishing, and that Stillaguamish fished in Port Susan, and beyond, at or before treaty times.  Dkts. ##170–172 (Stillaguamish motion for partial summary judgment and supporting declarations and exhibits);[23] Dkt. #206 (Stillaguamish reply in support of motion for partial summary judgment).[24]  In reply, Stillaguamish further argues that the responding tribes have failed to present any evidence establishing that Stillaguamish does not have marine U&A.  *See* Dkt. #206[25] at 7–9; *id.* at 9 ("Upper Skagit and Swinomish offer no evidence that directly contradicts Stillaguamish's evidence of treaty-time fishing in Port Susan—only metaphysical doubts and conjecture as to precise dating, parsing of immaterial details, and belabored claims of unrequired 'direct' evidence.").

The responding tribes disagree, arguing that Stillaguamish does not present direct evidence of Stillaguamish fishing and that the evidence does not support Stillaguamish's conclusions or those of its expert, noting that they are entitled to have all reasonable inferences drawn in their favor, and arguing that the appropriate inferences do not support Stillaguamish

---

[22] Dkts. ##223–231 (Dkts. ##22430–22433 in the *Main Case*).
[23] Dkts. ##22336–22338 in the *Main Case*.
[24] Dkt. #22374 in the *Main Case*.
[25] Dkt. #22374 in the *Main Case*.

ORDER – 13

marine U&A to differing degrees.  Dkts. ##191–192 (Upper Skagit opposition and supporting declaration and exhibits);[26] Dkts. ##198–199 (Swinomish opposition and supporting declaration and exhibits);[27] Dkt. ##200–201 (Tulalip opposition).[28]

Similarly, the responding tribes' own motions for full and partial summary judgment maintain that the limited evidence only supports the conclusion that Stillaguamish lacks marine U&A in specific marine waters or throughout the entirety of the marine waters identified by Stillaguamish.  Upper Skagit maintains that Stillaguamish lacks marine U&A entirely and has wholly failed to present evidence supporting its claims.  Dkt. #174.  Swinomish continues to argue that the Court lacks jurisdiction[29] to hear Stillaguamish's claims and maintains that Stillaguamish lacks marine U&A outside of Port Susan and opposes, but does not seek summary judgment on, Stillaguamish's U&A claims within Port Susan.  Dkt. #179.  Tulalip does not seek summary judgment on Stillaguamish's claim of marine U&A in the northern portion of Port Susan and a portion of Skagit Bay, but otherwise opposes Stillaguamish's claims.  Dkt. #176.[30]

Stillaguamish, with the shoe now on the other foot in opposing the responding tribes' motions, argues that the evidence does not support the responding tribes' conclusions or those of their experts, noting that it is now Stillaguamish that is entitled to have all reasonable inferences

---

[26] Dkts. ##22358–22359 in the *Main Case*.
[27] Dkts. ##22364–22365 in the *Main Case*.
[28] Dkt. #22366–22367 in the *Main Case*.
[29] The Court notes that Swinomish and Upper Skagit continue to raise questions of whether this Court retains jurisdiction to hear this matter.  Swinomish argues, essentially, that this Court lacks jurisdiction because Stillaguamish has not presented "new evidence."  Dkt. #179 at 24–26.  Similarly, Upper Skagit argues that the Court must strike all evidence that was previously before Judge Boldt.  Dkt. #204 at 4.  The Court finds no basis for the argument in the text of Paragraph 25.  At best, the responding tribes argue that the "logical corollary" to Paragraph 25(a)(1)'s exclusion of new evidence is that Paragraph 25(a)(6) should exclude everything but new evidence.  The parties do not present authority supporting the arguments and the Court does not find them persuasive.
[30] Dkt. #22342 in the *Main Case*.

ORDER – 14

drawn in its favor, and arguing that the appropriate inferences support its argument that it has marine U&A throughout the marine waters at issue in this case.[31] Dkt. #193 (Stillaguamish opposition to Swinomish motion for partial summary judgment); Dkt. #194 (Stillaguamish opposition to Tulalip motion for partial summary judgment);[32] Dkt. #195 (Stillaguamish opposition to Upper Skagit motion for summary judgment).

In the end, the Court is left with a jumble of evidentiary disputes, numerous exhibits that are open to multiple reasonable interpretations and are weighed differently by each of the tribes, differing interpretations and guidance from the tribes' experts, and disagreement on the appropriate conclusions which follow. At the same time, the Court is mindful of the relaxed standards applicable in the *Main Case*. Combined with the benefit of favorable inferences shifting between the parties, the Court simply is not able to determine that any claims should be resolved as a matter of law. While the Court's Order may be short on substantive analysis, it should not lead the parties to conclude that the Court has not examined the considerable efforts of the parties and their counsel in the depth that the filings warrant. Put simply, the Court finds that issues of material fact remain as to the historical evidence relevant to this case, the appropriate interpretations of the relevant evidence, and the conclusions that can be reasonably inferred therefrom. The parties should be afforded the opportunity to present their cases at trial.

**D. Motions to Withdraw**

Lastly, the Court addresses several notices that were filed to withdraw motions that were previously filed. Specifically, Stillaguamish filed a notice withdrawing a motion for partial

---

[31] *See e.g.*, Dkt. #193 at 1 ("Numerous issues of material fact, from Dr. Friday's testimony to the reasonable inferences that can be draw from Stillaguamish's historical and ethnological evidence, preclude summary judgment").
[32] Stillaguamish's opposition to Tulalip's motion for partial summary judgment does not appear on the docket of the *Main Case*.

ORDER – 15

summary judgment related to the responding tribes' assertion of laches as an affirmative defense, replacing it with a corrected version. Dkt. #177.[33] Subsequently, Stillaguamish filed a notice withdrawing its second motion for partial summary judgment related to laches. Dkt. #178.[34] Finally, Swinomish filed a notice withdrawing its motion to limit testimony of Stillaguamish's expert witness. Dkt. #183.[35] Each of the filed notices requested that the Court strike the motions and supporting documents. The Court grants the requests.

## IV.   CONCLUSION

Accordingly, and having reviewed the motions, the relevant briefing, supporting declarations, and exhibits, and the remainder of the record, the Court hereby finds and ORDERS:

1. Stillaguamish Tribe of Indians' Motion for Partial Summary Judgment re: Treaty Time Usual and Accustomed Fishing in Port Susan (Dkt. #170; Dkt. #22336 in Case No. C70-9213RSM) is DENIED.

2. Upper Skagit's Motion to Exclude Certain Expert Testimony (Dkt. #173; Dkt. #22339 in Case No. C70-9213RSM) is DENIED.

3. Upper Skagit Indian Tribe's Motion for Summary Judgment (Dkt. #174; Dkt. #22340 in Case No. C70-9213RSM) is DENIED.

4. The Tulalip Tribes' Motion for Partial Summary Judgment (Dkt. #176; Dkt. #22342 in Case No. C70-9213RSM) is DENIED.

5. Swinomish Indian Tribal Community's Motion for Partial Summary Judgment or Summary Judgment (Dkt. #179; Dkt. #22345 in Case No. C70-9213RSM) is DENIED.

---

[33] Dkt. #22343 in the *Main Case*.
[34] Dkt. #22355 in the *Main Case*.
[35] Dkt. #22349 in the *Main Case*.

ORDER – 16

6. Pursuant to Stillaguamish Tribe of Indians' Notice to Withdraw Pending Motion for Partial Summary Judgment re: Laches Affirmative Defense (Dkt. #177; Dkt. #22343 in Case No. C70-9213RSM), the Clerk of Court is REQUESTED TO STRIKE the:

    a. Stillaguamish Tribe of Indians' Motion for Partial Summary Judgment re: Laches Affirmative Defense (Dkt. #168; Dkt. #22334 in Case No. C70-9213RSM); and

    b. Declaration of Rob Roy Smith in Support of Stillaguamish Tribe of Indians' Motion for Partial Summary Judgment re: Laches Affirmative Defense (Dkt. #169; Dkt. #22335 in Case No. C70-9213RSM).

7. Pursuant to Stillaguamish Tribe of Indians' Notice to Withdraw Pending Motion for Partial Summary Judgment re: Laches Affirmative Defense (Dkt. #189; Dkt. #22355 in Case No. C70-9213RSM), the Clerk of Court is REQUESTED TO STRIKE the Stillaguamish Tribe of Indians' Motion for Partial Summary Judgment re: Laches Affirmative Defense (Dkt. #178; Dkt. #22344 in Case No. C70-9213RSM).

8. Pursuant to Swinomish Indian Tribal Community's Notice to Withdraw Pending Motion to Limit Testimony of Stillaguamish Tribe of Indians' Expert Witness (Dkt. #183; Dkt. #22349 in Case No. C70-9213RSM), the Clerk of Court is REQUESTED TO STRIKE the:

    a. Swinomish Indian Tribal Community's Motion to Limit Testimony of Stillaguamish Tribe of Indians' Expert Witness (Dkt. #181; Dkt. #22347 in Case No. C70-9213RSM); and

    b. Declaration of James W. Herr in Support of Swinomish Indian Tribal Community's Motion to Limit Testimony of Stillaguamish Tribe of Indians' Expert Witness (Dkt. #182; Dkt. #22348 in Case No. C70-9213RSM).

//

DATED this 15th day of March, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 18